Good morning, Your Honor, and may it please the court and counsel, and if I can, please, Your Honor, have two minutes reserved for rebuttal in this case. And so just to try to synthesize the briefs as best as I can, I'm asking the court to consider the issue we believe is most relevant in this case, and I think it's the issue that did the federal district court apply the incorrect standard for the section 2244 review under ADAPA? Underneath ADAPA, in a case like this, when there's double petitions or more than one petition, there's two standards, essentially called the gatekeeping functions. One is the diligence standard, the gatekeeping function. The second is the actual innocence gatekeeping function. The federal district court essentially passed on the diligence portion of that and assumed that the petitioner was diligent in this case and essentially passed judgment or gave the court at least a factual determination on the actual innocence portion of it. And so most of my argument is going to be considered gleaning on that portion of that, since the district court focuses on that in this decision. So then you agree then that the case comes down to whether or not you meet that actual innocence standard in the gatekeeping provision. That's really the center of this argument. Yes, your honor, I do believe that's correct. And so in terms of the actual innocence, the evidence needs to be considered as a whole, where no reasonable fact finder would have convicted the defendant of a crime. And so essentially, we're asking the court to consider what the Tenth Circuit has put together as a test for that. It's our belief that the Ninth Circuit has not really identified this issue, or essentially say they have identified the issue, but has not adopted a clear standard in which to use it. The district court used the Lee standard, where it is a Ninth Circuit case. However, that is pre-ADAPA, where it talked about the whole evidence standard, where in that case, all evidence new and old, admission at trial or not, would be considered by the reviewing court. And as I mentioned, at least in my review of that case, that is pre-ADAPA cases that that was used in, and also in terms of a procedural defaulted case rather than successive petition. So we, in our briefing, identified the Tenth Circuit case because looking at that case, it had a very broad, that essentially is a more succinct standard that they used, and also a little bit easier to identify. In that Tenth Circuit case, and what we've referred to in the brief, it's the case case, sorry for the double, where in that case, they look at, the reviewing court only looks at the evidence elicited at trial. And you adjust it for the evidence that was excluded because of the constitutional error vis-a-vis the constitutional error in terms of the Brady violation. But what is the set of evidence that we would add? Because, you know, Kay says it properly adjusted for evidence that he alleges was erroneously excluded due to trial-related constitutional errors. So here, the error is Brady. So is it just the TIRA letter? And so we add the TIRA letter to the trial record and then assess whether the standard is met? That's my, that's my argument to the court. That's correct, Your Honor, because I think that that that letter is sufficiently unique. One moment. Oh, I'm sorry. Yes, just following up on Judge Collins' question, the TIRA letter wasn't created until much later after trial. So we're talking about the testimony, right? Not the letter. That's correct, Your Honor. Is that correct? Okay, so she gave some testimony at trial under oath, and then there was also information as later reflected in the letter. So one of the arguments the government makes is that the jury could believe either one. Why isn't that correct? Well, it's because that letter was never introduced in evidence, of course. What happened at the trial is that TIRA did testify. And then some years after that, the letter come into existence, obviously. And so in terms of the jury seeing all that, they couldn't see that because it wasn't introduced in front of the trial. So the letter, of course, is not itself what would be the Brady material. It would be, I guess, her recantation or her attempt to recant her testimony at trial. But we're trying to see whether no reasonable fact finder would have found Mr. Charbonneau guilty of the underlying offense. And the government's point is a recantation doesn't have to be believed by the jury. So what's your response to that? Well, I think in this case, essentially, the jury gets to weigh that evidence, obviously. And in this case, mainly the issue was whether or not it was a first-degree murder conviction or not. Did he have the mens rea to actually do this premeditated murder? And so the jury would have been able to reflect upon the evidence that was given in the TIRA letter, where essentially she said there was another gun involved and that she talked to the police and they had her kind of manipulate her statement. And one of the biggest statements was whether or not there was additional shots fired after she came back to the house. And so that would  But don't you have to say, not that the jury should have weighed it, but that if her recantation was an evidence, no reasonable fact finder would have found him guilty? Isn't that the 2244B standard? It is, Judge. So we understand that as a standard. So it's certainly a high standard because it's a clear and convincing standard. However, I think the main thing is, I guess the point I want to make is that the court has the analysis of the Tenth Circuit, essentially the two gatekeeping functions. And then if you get through the gatekeeping function, then you go toward the merits of the case, where at that point, a district court would go through all that evidence. They would look at all the trial testimony, the letter, and then make that determination. So I don't think the court, at least going through the gatekeeping functions, got to essentially make that the whole under merits, but to just make that one determination, whether or not the court would consider any reasonable fact finder would not find him guilty. Did you want to save some time for rebuttal? Yes, please, Your Honor. Okay, we'll hear from the government. Thank you, Your Honor, and may it please the court. I would respectfully suggest that case versus Hatch does not apply in this case. Number one, and most importantly, it is contrary to Lee. It is also contrary to this court's most recent decision in Gable, I believe it was, that we submitted in our supplemental authorities. The evidence under the relevant statute 2244-2B has to be considered as a whole. And of course, in House versus Bell, the United States Supreme Court basically said, as a whole means everything, whether the evidence is admissible, not admissible, whatever it is. Now, I admit that in House versus Bell, that they were really talking about the petitioners or the defendants' evidence. But I would suggest to the court that the state, this is newly discovered evidence, and the state has to have an opportunity to rebut whatever new evidence a defendant would create, discover, whatever words you want to use, that the state has to have an opportunity to rebut that evidence by whatever evidence the state can come up with. And the reason for that is newly discovered evidence, the state can't rely upon just the evidence that presented at trial if the evidence is newly discovered. The state would have to have an opportunity to research that evidence, to determine whether it has any validity whatsoever, and the state should be able to rely upon evidence outside of the trial record. And in this particular case, that would include Charbonneau's pretrial sworn testimony that totally contradicts whether you call it Tara's letter or, more appropriately, recantation, at least as to some of what she testified to. Counsel mentioned, and I agree with him, that the standard is very daunting. It has to be clear and convincing evidence that no I am unaware of a higher standard outside of probably reasonable doubt at the trial in which a party has to overcome evidence. It's an onerous and very demanding standard. In the context of recantations, they're viewed with great suspicion, as this court most recently stated in Gable. It upsets society's interest in finality. It's unreliable with suspect motives. Recantations are generally used nothing more for nothing more than impeachment evidence. If this case were retried, would Charbonneau's prior testimony that was relied upon by the answer that it would certainly be admissible. Whether the prosecutor at a retrial would want to use that testimony, I think it would depend upon a number of things, including whether the Tara letter would even be admissible because the Idaho Supreme Court found that the Tara letter was not admissible. Now, I recognize that in viewing in the standards as far as 2244 B2B, that it doesn't have to be admissible. That's under House and that's under Schlupp, but it would have to be admissible at trial. And so with the Idaho Supreme Court having already determined that it's not admissible, I don't know that a retrial would include Charbonneau's but as far as the test under actual innocence, it is certainly something that this court should consider, but it's not necessary. And what I mean by that is that if you look at the Tara letter in and of itself, as this court did in Gable, the Tara letter itself is one of the most unreliable pieces of quote unquote evidence that I have seen. Charbonneau's attorney at the end of the evidentiary fifth, at the end of the evidentiary hearing for the latest post-conviction petition conceded on volume 15, in volume 15 of the excerpt of record page 4191 when talking about the Tara letter, quote, we'll never know, end quote. If Tara quote, wrote this in a drunken stupor and everything in it is wrong and a lie, end quote. The post-conviction court itself, the one that granted relief said, quote, Tara is dead. We can't go back and ask her whether the letter is true or what she knew about it, end quote. Quote, she cannot be cross-examined, end quote. Quote, if the letter in all respects was true, end quote, we don't know that and a trial won't tell us that, end quote. Quote, we will never know what the claims, excuse me, we will never know whether the claims in the letter are true, end quote. Quote, there are many questions left unresolved and many parts of this evidentiary puzzle do not fit together, end quote. And then the court noted that there were some other unanswered questions. If Charbonneau's attorney and the post-conviction court that actually granted relief for all intents and purposes found that the Tara letter was unreliable, I don't see how it is conceivable that Charbonneau has met his burden of establishing clear and convincing evidence that a reasonable juror would find him guilty. And that's just the letter itself, which this court said should be considered first in Gabel. Then you look at the evidence that was presented at trial. The Tara letter is contradicted by the forensic evidence. Dr. Ramsey said there were 16 entrance wounds, none of which were to the head. Uh, there were five bullets recovered from Marilyn's body. That may ask you a question about the forensic evidence. The Idaho Supreme Court stated at one point the forensic evidence showed that she was shot at least 14 times with that rifle. That latter part doesn't seem to me to be correct because the ballistics didn't cover 14 shots. Am I reading that wrong? No, Your Honor. I believe you are reading that correctly because there were only, as I recall, six bullets that were recovered from Marilyn's body, five of which were definitively, um, from the Remington rifle. The sixth, uh, bullet, they weren't certain. Um, they couldn't determine it definitively. So this sentence is just wrong. It is, Your Honor. As far as the 14 bullets, no, there were not 14 bullets recovered from Marilyn's body. So does that mean if you, if Charbonneau were to get past the key gatekeeping provision that we've been discussing and, and got into EDPA, normal EDPA standards, would we then have to say that this Idaho Supreme Court ruling was based on a misapplication, unreasonable determination of the facts? Honestly, Your Honor, I haven't given that a great deal of thought shooting from the hip. I would say that it is, uh, it is clearly a misstatement, an erroneous finding of fact. Whether the Supreme Court's decision was based upon, and that's key, based upon that particular fact, I think is a, is a harder question. And I would suggest that it's not. Uh, I think the bigger issue was the Idaho Supreme Court was just having nothing with the TRL letter being reliable. Can I ask another question, which may go a little bit beyond the particular circumstances of this case? Have any Idaho authorities done any investigation into what happened here? Because the fact pattern here is quite extraordinary in terms of, uh, material just showing up, um, years later and the state conceding that this is in her handwriting and having a finding that it was withheld. Has, has any investigation been done to determine who did this and, and what should happen to them? Your Honor, there was investigation done. And I, uh, what I can tell you is that it was discussed at the evidentiary hearing. There were some things that probably were not presented at the hearing. I have my own theories that are not part of the record about who was involved in this. I think it's clear to, clear, fair to state, though, that even the Idaho Supreme Court concluded that Shedd was involved in helping, that's the paralegal, Shedd was involved in helping and um, it is bizarre, but if I could state, state one other thing, uh, my time's running out, and that is that the, the state did agree that the TIRA letter, stipulated that the TIRA letter, that the expert said the TIRA letter was in her handwriting, but it was a multi-generational copy and they never agreed that it was authentic. Thank you, Your Honors, we'd ask to affirm. All right. Um, Mr. Ball, you have a few minutes left. Thank you, Your Honor. And I was just going to make that point because it's, uh, in the district court, the state district court, uh, proceeding, uh, the, the judge did find and the state did stipulate that the letter was, uh, authentically written by, um, TIRA. And so that was one of the issues I wanted to make sure the court was aware of. Um, and there were some other inconsistencies in the, uh, the Idaho state Supreme court, decisionally, some terms of the facts. And so that's why, uh, we look for a different case where this court could look at all of, all of the facts, uh, kind of like a more of a de novo, um, a de novo type of, uh, uh, strict review, just because as this court knows people get facts wrong, courts can get it wrong, attorneys get it wrong. And so that's why a more, a bigger, a better review that you can look at the trial record and any additional evidence related that's tied to that. Um, and if you get over that standard, which we've agreed is much more difficult, you get into the merits of the case. And that's where the state would be able to present their evidence, uh, to talk about the letter. So do you agree that for purposes of applying the gatekeeping provision of B2B2, we can look at, um, Charbonneau's testimony? I don't believe so. Now, well, it just depends on what standard the court would use. And so under, um, the Lee standard, which the district court looked at would be yes, because it looked at like a look at all evidence. However, if this court adopted the 10th circuit standard, which we're asking the court to look at in the doing, I don't believe so. At least at that point, you would look at the trial testimony, um, and then whatever new evidence that was brought to to the Brady violation. So it would mainly be a review of that record. But doesn't the standard look a lot like the Schlup standard for excusing procedural error with just a higher standard of proof? So why wouldn't we read them together? Well, I just, I guess my, my best argument is it's that first, the, the, the Schlup was all inconsistent because the Schlup, that the standard is different. Um, and then this one, it's clear and convincing. So it'd be like, it would almost disregard, um, even one of those factors, at least the way I thought about that. But, um, I think if you use a higher, clear and convincing standard, you wouldn't be using the Schlup. And so just in, in just a review, we're just asking the court to essentially remand this case back to the district court with the correct standard, which we think the 10th circuit would be. And it is something the 9th circuit would apply to future cases, um, and let the district court, uh, re-decide the case on the jurisdictional issues. And then if they reach that, then look at, on the merits. Okay. Well, we thank both sides for their argument. The case of Charbonneau versus, uh, Ramirez is submitted.
judges: IKUTA, COLLINS, Fitzwater